# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ATTILIO D'AGOSTINO, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No: 3:05cv01057 (PCD) |
| | : | |
| HOUSING AUTHORITY OF THE CITY | : | |
| OF WATERBURY, | : | |
|     Defendant. | : | |

## <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Attilio D'Agostino brings this employment discrimination action, alleging that he was terminated on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"), and Connecticut's Fair Employment Practices Act, Connecticut General Statutes § 46a-60(a)(1) ("CFEPA"). Defendant Housing Authority of the City of Waterbury ("Housing Authority") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Defendant's Motion for Summary Judgment [Doc. No. 48] is **denied**.[1]

## I.    BACKGROUND[2]

---

[1]    Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment was filed with this Court on July 18, 2006, eight days after Defendant filed its Motion for Summary Judgment and Plaintiff's Opposition, compliant with the Supplemental Order, with this Court. Plaintiff argues, in a letter dated July 19, 2006, that Defendant's reply brief violates the Court's Supplemental Order as it was not filed with the entire bundle on July 10, 2006. Defendant's reply brief was, however, filed in accordance with Local Rule 7(d), which provides that "[a]ny reply brief must be filed within 10 days of the filing of the responsive brief to which reply is being made, as computed under Fed. R. Civ. P. 6." D. Conn. Loc. Civ. R. 7(d). On that ground, and because Plaintiff has not shown any adverse or prejudicial impact arising from this Court's consideration of the reply brief, it will be considered.

[2]    With regard to facts taken from Defendant's Local Rule 56(a)(1) Statement, the facts are admitted by Plaintiff unless otherwise noted. The Court notes that Plaintiff objects to its consideration of his April 7, 2006 deposition due to Defendant's failure to provide an Italian translator at the deposition. (D'Agostino Aff. ¶ 16, July 6, 2006, Ex. 1 to Pl.'s Mem. Opp. Mot. Summ. J.) By failing to raise the issue earlier, however, Plaintiff has waived the ability to object to the taking of

On May 22, 1995, the Housing Authority's then-Executive Director Silvio Broccoli hired Plaintiff to work as a laborer in the Housing Authority's Maintenance Department. (D'Agostino Dep. 25:2-26:6, Apr. 7, 2006, Ex. 1 to Def.'s Mot. Summ. J.) Plaintiff, born on March 27, 1947, was forty-eight years old at the time he was hired. (Def.'s Local Rule 56(a)(1) Statement ¶ 1.)

After Plaintiff had been working at the Housing Authority for approximately eleven months, Mr. Broccoli promoted him to the position of Mechanic. (D'Agostino Dep. 28:2-22.) As a Mechanic, Plaintiff was part of the Maintenance Security Bargaining Unit ("Blue Collar Bargaining Unit") and his employment was covered by the terms of a collective bargaining agreement between the Housing Authority and the Service Employees Union Independent, Local 531 ("SEIU"). (Id. at 29:21-30:1.)

In 1996, Mr. Broccoli retired as Executive Director, (Def.'s Local Rule 56(a)(1) Statement ¶ 6), and was replaced by Bruno Lacaria, who promoted Plaintiff to the position of Work Coordinator in or around the year 2000, (Pl.'s Dep. 30:2-16).  In January of 2004, Mr. Lacaria again promoted Plaintiff, this time to the position of Maintenance Supervisor. (Id. at 33:5-20.) As a Maintenance Supervisor, Plaintiff was part of the Professional, Administrative, Technical, Clerical and Supervisory Unit ("White Collar Bargaining Unit") and was covered by the terms of a collective bargaining agreement between the Housing Authority and SEIU. (Id. at

---

his deposition and the ability to correct any allegedly inaccurate testimony. See FED. R. CIV. P. 32(d)(4) ("Errors and irregularities in the manner in which the [deposition] testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with . . . are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained."). Accordingly, because Plaintiff's objection is "untimely" and appears to be "without merit and interposed solely for the purpose of defeating defendants' motion for summary judgment," Harb v. United Parcel Serv., No. 84 Civ. 8430 (WCC), 1985 WL 4850, at *4-5 (S.D.N.Y. Dec. 23, 1985), it is disregarded.

32: 1-4.)

In March 2004, William Willet became the Housing Authority's Interim Executive Director. (Def.'s Local Rule 56(a)(1) Statement ¶ 13.) Mr. Willet held a series of meetings with representatives of the Blue Collar and White Collar Bargaining Units that included discussions of job eliminations in the Blue Collar and White Collar Bargaining Units and in the non-bargaining units. (Id. ¶ 17.)

On June 15, 2004, Mr. Broccoli took the position of Interim Executive Director at the Housing Authority. (Id. ¶ 21.) By letter dated June 29, 2004, Plaintiff was notified that the Maintenance Supervisor position would be eliminated, effective July 6, 2004. (Id. ¶ 24.) On July 6, 2004, a meeting was held that was attended by Plaintiff, Mr. Broccoli, White Collar Bargaining Unit Union Steward Jeffrey Sutton, SEIU Representative Patrick Hayes, Housing Authority Director of Building and Grounds Ronald Dubuque, and Housing Authority employment attorney William Ryan. (Id. ¶ 26.)

Plaintiff alleges that at the time of the July 6, 2004 meeting, there were seventeen employees in the White Collar Bargaining Unit who ranked below Plaintiff in seniority. (D'Agostino Aff. ¶ 9, July 6, 2006, Ex. 1 to Pl.'s Mem. Opp. Mot. Summ. J.) Plaintiff asserts that the Housing Authority refused to allow him to "bump" into any of these positions, in violation of the collective bargaining agreement. (Id.) Plaintiff also alleges that the position of Maintenance Supervisor was eliminated on July 6, 2004 even though it was required by contract to be in existence until 2006. (Pl.'s Mem. Opp. Mot. Summ. J. 8.) In addition, Plaintiff alleges that during the July 6, 2004 meeting, Mr. Broccoli told Plaintiff that "someone younger could do

better."[3] (D'Agostino Aff. ¶ 4.) Finally, Plaintiff alleges that although the Housing Authority had experienced financial difficulties in the past, Plaintiff was the only employee in the Housing Authority's history to be let go from the White Collar Bargaining Unit. (Pl.'s Mem. Opp. Mot. Summ. J. 9.)

On July 30, 2004, Plaintiff filed a grievance with the Connecticut State Board of Mediation and Arbitration ("Board of Arbitration") alleging that the Housing Authority violated the collective bargaining agreement and its personnel policies by eliminating the Maintenance Supervisor position. (Def.'s Local Rule 56(a)(1) Statement ¶ 39.) On August 22, 2005, the Board of Arbitration issued a decision finding that the Housing Authority did not violate the collective bargaining agreement or its personnel policies. (Arbitration Award at 7, Ex. 10 to Def.'s Mem. Supp. Mot. Summ. J.) Specifically, the Board of Arbitration found that:

> [Plaintiff] was . . . advised by the bargaining unit representative of suitable positions held by less senior employees that [Plaintiff] could "bump" into assuming he met those minimum qualifications. [Plaintiff] was told that if he was interested in a position that he believed he was qualified for and the [Housing] Authority disagreed, the Union would file a grievance on his behalf. The Union representative never heard from [Plaintiff] about any position [Plaintiff] believed he was qualified for and, therefore, no grievance was filed on his behalf.

(Id. at 3.)  The Board of Arbitration also found that "the position of Maintenance Supervisor is part of the white collar bargaining unit and subject to layoffs like all other employees in the Unit. The position of Maintenance Supervisor is no different than other bargaining unit employees and

---

[3]   Plaintiff contends that the other persons at the meeting sitting around the table would not have heard the statement, even though Plaintiff was sitting across from Mr. Broccoli at a four-foot wide table. (See Def.'s Local Rule 56(a)(1) Statement ¶ 33.)

[Plaintiff's] argument on this point is rejected."[4] (Id. at 6.)

On August 27, 2005, Plaintiff filed a Municipal Prohibited Practice complaint against the Housing Authority with the Connecticut State Board of Labor Relations ("Labor Board") seeking reinstatement as Maintenance Supervisor with backpay and benefits. (Def.'s Local Rule 56(a)(1) Statement ¶ 44-45.) Plaintiff alleged that the Housing Authority violated the Municipal Employees Relations Act by discharging him because of various lawful union activities. (Labor Bd. Decision & Dismissal of Compl. at 1, Ex. 13 to Def.'s Mem. Supp. Mot. Summ. J.) On August 29, 2005, the Labor Board found that the Housing Authority did not violate the Municipal Employees Relations Act with regard to Plaintiff's discharge. (Def.'s Local Rule 56(a)(1) Statement  ¶ 47.) Specifically, the Labor Board found that a bargaining unit representative

> provided the [Plaintiff] with the job descriptions of those employees less senior than the [Plaintiff] and informed the [Plaintiff] that if he met the minimum qualifications for any of the positions, he was entitled to bump less senior employees. The [Plaintiff] never conveyed to [the bargaining unit representative] an interest in bumping to another position.

(Labor Bd. Decision & Dismissal of Compl. at 5.)

The Labor Board also found that "[t]he positions scheduled for layoff included non-bargaining unit managerial positions, two positions within the blue collar bargaining unit, and the maintenance supervisor position," and that "[p]rior to [Plaintiff's] promotion in January 2004, the maintenance supervisor position had been vacant for three years." (Id. at 4.) Both the Board of Arbitration and the Labor Board found that the Housing Authority was in fact experiencing

---

[4]    The Board of Arbitration noted that initially "(14) positions were identified for layoffs that included non-Union employees and blue and white collar bargaining unit positions." (Arbitration Award at 2.)

financial difficulties and that these difficulties motivated the Housing Authority's decision to discharge Plaintiff. (Arbitration Award at 5; Labor Bd. Decision & Dismissal of Compl. at 6.)

In November 2005, Plaintiff filed a complaint in the Connecticut Superior Court alleging that five current or former employees of the Housing Authority and one staff representative of SEIU conspired to eliminate the Maintenance Supervisor position ("Conspiracy Case"). (Def.'s Local Rule 56(a)(1) Statement ¶ 55.) Plaintiff testified in his deposition that he did not know if any of these individuals named as defendants in the Conspiracy Case conspired against him because of his age. (D'Agostino Dep. 64:__-65:__.) Plaintiff filed the instant Complaint in this Court on July 1, 2005.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

6

The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 255. When moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant can satisfy its burden of establishing that there is no genuine issue of material fact in dispute by pointing to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." The nonmoving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In making this determination, the court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province

of the jury. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

## III.    DISCUSSION[5]

Plaintiff alleges that the Housing Authority discriminated against him on the basis of his age in violation of the ADEA and CFEPA. The ADEA seeks to "promote employment of older persons based on their ability rather than age . . . [and] to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b). The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." Id. § 623(a)(1). The ADEA covers the class of employees who, like Plaintiff, are over the age of forty. The CFEPA makes it unlawful for employers to refuse to hire or discharge from employment any person on the basis of age. CONN. GEN. STAT. § 46a-60(a).

ADEA claims are analyzed under Title VII's burden-shifting framework, as set out in

---

[5]    Plaintiff's Complaint alleges violations of both the ADEA and CFEPA. Claims of age discrimination under both laws are subject to the same legal analysis and therefore, the discussion below applies to the federal and state law causes of action, as Defendants have moved for summary judgment on both counts. See Bd. of Educ. v. Comm'n on Human Rights and Opportunities, 266 Conn. 492, 504 n.18, 832 A.2d 660, 668 n.18 (2003); McInnis v. Town of Weston, 375 F. Supp. 2d 70, 85 (stating that CFEPA claims proceed under the same analysis as ADEA claims).

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). See

Hazen Paper Co. v. Biggins, 507 U.S. 604, 612, 123 L. Ed. 2d 338, 113 S. Ct. 1701 (1993)

(noting that the McDonnell Douglas proof standard applies to ADEA claims). In McDonnell

Douglas, the Supreme Court set forth the allocation of burdens and order of presentation of proof

in a Title VII case alleging discriminatory treatment:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of discrimination. Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to the defendant to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection. Third, should
> the defendant carry this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the legitimate reasons offered by
> the defendant were not its true reasons, but were a pretext for discrimination.

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207

(1981) (citing McDonnell Douglas, 411 U.S. at 802-804).

**A.      Plaintiff's Prima Facie Case**

In order to establish a prima facie case under the McDonnell Douglas burden-shifting

framework, Plaintiff must first show: (1) that he is a member of the protected class, (2) that he is

qualified for the position he held, (3) that he suffered an adverse employment action, and (4) that

the circumstances surrounding the action gave rise to an inference of age discrimination. See

Schnabel v. Abrahmson, 232 F.3d 83, 87 (2d Cir. 2000); see also Burdine, 450 U.S. at 253 ("The

plaintiff must prove by a preponderance of the evidence that she applied for an available position

for which she was qualified, but was rejected under circumstances which give rise to an inference

of unlawful discrimination."). Plaintiff's burden at this stage is not an onerous one; he merely has

to present facts sufficient to give rise to a presumption of age discrimination. See Burdine, 450

U.S. at 254; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (holding the plaintiff

to a "de minimis burden of proof at the prima facie stage").

Plaintiff, as an individual over the age of forty, is a member of a protected class. 29 U.S.C. § 631(a)(1). Plaintiff's qualification for the position of Maintenance Supervisor is not disputed and therefore the Court will assume *arguendo* that he is so qualified. It is also clear that Plaintiff suffered an adverse employment action, namely his termination. (Def.'s Local Rule 56(a)(1) Statement ¶ 24.) Accordingly, the only question with regard to Plaintiff's prima facie case is whether his termination occurred under circumstances giving rise to an inference of discrimination.

Plaintiff sets forth four allegations of circumstances giving rise to an inference of discrimination.  The first two of these allegations—i.e., that the Housing Authority violated the collective bargaining agreement by wrongfully preventing Plaintiff from "bumping" into any of the seventeen positions in the White Collar Bargaining Unit that ranked below him in seniority, (D'Agostino Aff. ¶ 9), and that the Position of Maintenance Supervisor was eliminated even though it was required by the collective bargaining agreement to be in existence until 2006, (Pl.'s Mem. Opp. Mot. Summ. J. 8)—pertain to the Housing Authority allegedly violating the terms of its collective bargaining agreement with SEIU.  Plaintiff's third allegation is that during the July 6, 2004 meeting, Mr. Broccoli told Plaintiff that "someone younger could do better." (D'Agostino Aff. ¶ 4.)  Finally, Plaintiff alleges that he was the only employee in the history of the Housing Authority to be let go from the White Collar Bargaining Unit, even though the Housing Authority had experienced financial difficulties in the past. (Pl.'s Mem. Opp. Mot. Summ. J. 9.) Defendant disputes each of Plaintiff's allegations. (Def.'s Reply 4.)

1.      Contractual Allegations Adjudicated Through Arbitration[6]

This Court has held that where an employer's decision departs from procedural regularity and adversely affects an employee, a reasonable jury could infer a discriminatory motive on the part of the employer. See Matthews v. Conn. Light & Power Co., No. 3:05cv226 (PCD), 2006 WL 2506597, at *10 (D. Conn. Aug. 29, 2006); see also Stern v. Trs. of Columbia Univ., 131 F.3d 305, 313 (2d. Cir. 1997) ("[D]epartures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision."). Plaintiff alleges that his discharge violated the collective bargaining agreement, and in light of other circumstantial evidence, may give rise to an inference of discrimination.

Plaintiff's allegations regarding the collective bargaining agreement have been heard by neutral factfinding bodies and have been resolved in favor of the Housing Authority. The Labor Board and the Board of Arbitration found that the Housing Authority offered Plaintiff the opportunity to seek a position for which he was qualified that was occupied by a less senior employee. (Labor Bd. Decision & Dismissal of Compl. at 5; Arbitration Award at 7.) Contrary to Plaintiff's allegation, the Labor Board and Board of Arbitration found that Defendant did not preclude Plaintiff from pursuing this opportunity. Rather, Plaintiff did not express interest in any of these positions. (Id.) Furthermore, the Labor Board and the Board of Arbitration found that

---

[6]      Plaintiff implies that the conclusion of the Board of Arbitration was biased, since he "and one other person . . . saw Defense Counsel's father . . . a high ranking Member of the Board, talking to the two (2) arbitrators who ruled against [him] just outside of the hearing room." (D'Agostino Aff. ¶ 14.) The presence of an "independent and unbiased arbitrator" is a precondition to a court giving probative weight to an arbitration proceeding. See Collins v. New York City Transit Auth., 305 F.3d 113, 115 (2d Cir. 2002). Although Plaintiff's allegations do not lead this Court to conclude that the findings of the Board of Arbitration were tainted by bias, the Court will view these findings with caution. In ruling on this Motion, the Court only relies on findings of the Board of Arbitration that were also found by the Labor Board, since Plaintiff has not called the independence of the Labor Board and/or the fairness of its decision into question.

Defendant was under no contractual obligation to maintain the Maintenance Supervisor position until 2006. (Labor Bd. Decision & Dismissal of Compl. at 4; Arbitration Award at 6.)

Plaintiff urges that the United States Supreme Court as well as the Connecticut Supreme Court have held that "[an] issue may be re-litigated within the context of . . . a discrimination claim–despite an adverse decision to Plaintiff by an arbitral body." (Pl.'s Mem. Opp. Mot. Summ. J. 12 n.10.) Plaintiff's argument, however, misconstrues the decisions of both courts.

In Alexander v. Gardner-Denver Co., 415 U.S. 36, 51-52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that a plaintiff's Title VII claim was not foreclosed by an arbitral decision against him. In the instant case, the findings of the Labor Board and the Board of Arbitration do not serve to preclude Plaintiff's age discrimination claims, as neither the decision of the Labor Board nor that of the Board of Arbitration determined the issue of age discrimination. Instead, the relevant determinations of the arbitral bodies pertain primarily to findings of fact regarding Plaintiff's contractual rights under the collective bargaining agreement. The Supreme Court has "stressed that an employee's contractual rights under a collective-bargaining agreement are distinct from the employee's statutory Title VII rights" and that "a labor arbitrator has authority . . . to resolve questions of contractual rights." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 34, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).

Although a negative arbitration decision does not preclude a Title VII action, "a decision by an independent tribunal . . . will attenuate a plaintiff's proof." Collins v. New York City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002). As the Second Circuit explained in Benjamin v. Traffic Executive Assoc. E.R.R., 869 F.2d 107, 112 (2d Cir. 1989), "invoking collateral estoppel in a given case may be permissible when invoking res judicata is not." Specifically, granting

collateral estoppel is proper where "[t]he issue on which the arbitration board found against plaintiffs was not a constitutional issue" and instead "the nature of the issue . . . is much more akin to the law of the shop." Id. at 113. In other words, it is not "improper to grant collateral estoppel effect to an arbitration panel's factual findings regarding [the] underlying acts upon which the . . . claim was based, provided the arbitrators' findings were within their authority and expertise." Id. at 114 (quoting Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352 (11th Cir. 1985)) (internal quotations omitted).

Since Plaintiff's first two allegations pertain solely to his contractual rights under the collective bargaining agreement, and because these allegations have been reviewed by arbitrators with the relevant authority and expertise, this Court grants collateral estoppel effect to the arbitration panels' factual findings. Therefore, Plaintiff's allegations with regard to his contractual rights under the collective bargaining agreement present no material fact that could be decided in favor of Plaintiff to establish circumstances giving rise to an inference of discrimination.

## 2.    Plaintiff's Remaining Allegations

Plaintiff alleges that during the July 6, 2004 meeting, Mr. Broccoli told Plaintiff that "someone younger could do better." (D'Agostino Aff. ¶ 4.)  The Second Circuit has held that "stray remarks," standing alone, are not sufficient to support a discrimination action. Danzer v. Norden Sys., 151 F.3d 50, 56 (2d Cir. 1998). To determine whether a comment is merely a non-probative "stray remark," courts consider the following factors:

> (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the

13

remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process.

Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512, 518-19 (S.D.N.Y.2004).

The remark at issue here was made by a decisionmaker, was made soon after Plaintiff's termination, was clearly discriminatory, and was made in the context of justifying or explaining the termination decision at issue. As such, this remark cannot be considered "stray." Although it seems doubtful, as Plaintiff alleges, that no other person at the meeting sitting around the table would have heard the statement, determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes, 84 F.3d at 619.

Finally, Plaintiff alleges that he was the only employee in the history of the Housing Authority to be let go from the White Collar Bargaining Unit, even though the Housing Authority had experienced financial difficulties in the past. (Pl.'s Mem. Opp. Mot. Summ. J. 9.) Such an allegation, if true, could suggest that Plaintiff was singled out for a discriminatory reason. This inference is weakened somewhat by the Labor Board and Board of Arbitration's findings that several other positions were eliminated during the 2004 layoffs. (Arbitration Award at 2; Labor Bd. Decision & Dismissal of Compl. at 4.) It appears, however, that the positions which were ultimately eliminated were not in the White Collar Bargaining Unit. (See Labor Bd. Decision & Dismissal of Compl. at 4 ("The positions scheduled for layoff included non-bargaining unit managerial positions, two positions within the blue collar bargaining unit, and the maintenance supervisor position.").) It would seem that such a sweeping allegation by Plaintiff, if false, could easily be refuted by Defendant by simply showing that other White Collar employees had been

laid off in the past. Instead, Defendant asserts that the allegation "is simply false." (Def.'s Reply 6.) While it is true that "[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial," Parker, 260 F.3d at 111, it is also true that the defendant must "point to an absence of proof on the plaintiff's part." Id. This Court has no reason to disbelieve Plaintiff's affidavit, in which he attests that he was the only employee in the history of the Housing Authority to be let go from the White Collar Bargaining Unit. Viewed in the light most favorable to Plaintiff, this fact could suggest circumstances giving rise to an inference of discrimination, particularly when combined with Mr. Broccoli's alleged statement. Therefore, the Court finds that Plaintiff has made out a prima facie case of age discrimination.

### B.    Defendant's Non-Discriminatory Reason for Discharging Plaintiff

Assuming that Plaintiff has made out a prima facie case of age discrimination, the burden then shifts to Defendant to establish a legitimate, nondiscriminatory business reason for its action. See 29 U.S.C. § 623(f)(2); Burdine, 450 U.S. at 254. Defendant's burden is "one of production, not persuasion[, and] . . . involv[es] no credibility assessment." Reeves, 530 U.S. at 142; see also Hicks, 509 U.S. at 510-11 (1993) (explaining that "the burden of production determination necessarily precedes the credibility-assessment state"). Defendant "need not persuade the court that it was actually motivated by the proffered reasons . . . . [as i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254. To carry its burden of proof on this issue and shift the burden back to Plaintiff, Defendant must, using admissible evidence, set forth reasons which are sufficient to support a finding that unlawful discrimination was not the cause of the employment action. Id. at 254-55 and n.8.

15

The Housing Authority asserts that Plaintiff's discharge was prompted by financial difficulties. (Def.'s Mem. Supp. Mot. Summ. J. 26.) Defendant presents admissible evidence in support of this assertion. (See, e.g., Jeffrey Sutton Aff. ¶¶ 6-7, June 12, 2006, Ex. 6 to Def.'s Mem. Supp. Mot. Supp. Summ. J.; Patrick Hayes Aff. ¶ 6, June 12, 2006, Ex. 7 to Def.'s Mem. Supp. Mot. Supp. Summ. J.; Housing Auth. Budget Reports, Ex. 4 to Def.'s Mem. Supp. Mot. Supp. Summ. J.). In addition, both the Board of Arbitration and the Labor Board found that the Housing Authority was in fact experiencing financial difficulties and that financial difficulties were at least one motivation behind the Housing Authority's decision to discharge Plaintiff. (Arbitration Award at 5; Labor Bd. Decision & Dismissal of Compl. at 6.)  Defendant's evidentiary showing that financial reasons prompted Plaintiff's termination is sufficient to shift the burden back to Plaintiff to produce evidence demonstrating that the asserted reason is pretextual. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

## C.    Plaintiff's Demonstration of Pretext

Once the employer articulates a legitimate, non-discriminatory reason for termination, the plaintiff must proffer sufficient evidence to persuade a rational jury that the employer's stated reason is pretextual and that it is more likely than not that discrimination was the real reason for the adverse employment action. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004); Weinstock, 224 F.3d at 42. The plaintiff may meet this burden by relying on "the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000). When the presumption raised by the

16

plaintiff's prima facie case is rebutted, the factual inquiry "proceeds to a new level of specificity." Fisher v. Vassar College, 114 F.3d 1336 (2d Cir. 1997).

Plaintiff makes several arguments asserted to be demonstrative of pretext. First, Plaintiff asserts that the Housing Authority had sufficient funding at the time Plaintiff was hired, and that he was not permitted to take his previous assignment in lieu of a layoff. (Pl.'s Mem. Opp. Summ. J. 11-12.) First, the fact that the Housing Authority had sufficient funds at the time Plaintiff was *hired*, even if true, does not imply that a later shortfall did not prompt Plaintiff's discharge. Plaintiff's own evidence indicates that this is the case. John Barbino, although mentioning that at the time of Plaintiff's promotion "we had plenty of money and there was no problem," (Statement of John Barbino 137:8-9, Ex. 4 to Pl.'s Mem. Opp. Mot. Summ. J.), also stated that "[a]t that time [of Plaintiff's promotion] we weren't as really concerned with money as, you, know, they are now," (Statement of John Barbino 39:17-19, Ex. 7 to Pl.'s Mem. Opp. Mot. Summ. J.) Defendant's refusal to permit Plaintiff to take his previous position—in light of Plaintiff's assertion that such was the common practice, (see D'Agostino Aff. ¶ 7)—may lead a jury to infer that Defendant's non-discriminatory reason is pretextual.[7]

Plaintiff also asserts that pretext is demonstrated by the Housing Authority precluding Plaintiff from "bumping" into one of the seventeen less senior positions in the White Collar Bargaining Unit, and by preventing him from taking his previous position, since doing so would

---

[7]     Granted, when an employer discharges an employee for financial reasons, the fact that the employer refuses to rehire the employee for some other paid position does not necessarily imply that the employee's financial motives were pretextual. Plaintiff asserts, however, that notwithstanding its budgetary problems, the Housing Authority had a common practice of permitting employees to revert back to previous positions in lieu of a layoff. (D'Agostino Aff. ¶ 7.) Such an inconsistency on the part of Defendant could indeed lead a trier of fact to conclude that Defendant's non-discriminatory explanation is pretextual.

violate the collective bargaining agreement and risk "costly legal liabilities." (Pl.'s Mem. Opp. Summ. J. 12-13.) (emphasis omitted). As mentioned previously, Plaintiff's allegation that the Housing Authority violated the collective bargaining agreement was heard by neutral fact-finding bodies and was resolved in favor of the Housing Authority. These findings have been granted collateral estoppel effect, and Plaintiff cannot contradict them now to show pretext.

Plaintiff further alleges that pretext is demonstrated through the existence of "an illegal plan among some of the [Housing Authority's] higher level management officials to discharge the Plaintiff from its employment." (Id. at 13.) (emphasis omitted). Plaintiff concedes that if there were there any conspiracy to discharge him, it would be due to his union activity rather than his age, (id. at 13 n.11), but he argues that any showing of pretext, even if its purpose was not to shield age discriminatory motives, demonstrates dishonesty and is therefore "evidence of culpability." (Id.)

In support of this argument, Plaintiff cites Justice Ginsberg's concurrence in Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 154, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), where she noted that "a jury is entitled to treat a party's dishonesty about a material fact as evidence of culpability." While this line of reasoning might be consistent with a "general principle of evidence law," id. at 147, this argument does not help Plaintiff show pretext for age discrimination. Here, Plaintiff does not merely argue that the Defendant's proffered reason is implausible or dishonest in order to imply that the true reason might be discriminatory. Rather, Plaintiff provides a completely different theory as to why he was discharged which tends to contradict his claim of age discrimination. Specifically, Plaintiff suggests that he was not discharged because of his age, but rather because of his union activities. As the Supreme Court

18

has long held, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown both that the reason was false, *and* that discrimination was the real reason." Hicks, 509 U.S. at 515 (emphasis in original). It would be paradoxical if Plaintiff could prevail by refuting Defendant's legitimate, nondiscriminatory reason by showing that another nondiscriminatory reason was the true motivation for his termination.

Plaintiff also alleges that pretext is demonstrated by the Housing Authority's alleged failure to afford him adequate written notice or a hearing upon discharge, even though doing so would be "a little to 'no-cost function.'" (Pl.'s Mem. Opp. Summ. J. 13-14.) Plaintiff's allegation that the Housing Authority failed to afford him adequate written notice or hearing upon discharge was considered in the arbitration proceedings before the Board of Arbitration.[8] (Arbitration Award at 5.) The Board of Arbitration concluded that the Housing Authority had no obligation under the collective bargaining agreement to provide a notice of the layoff and a right to a hearing. (Id. at 7.) As mentioned previously, this Court has decided to give such fact-based, contractual findings preclusive effect, however, the arbitral finding on this issue is quite limited. Specifically, the Board of Arbitration simply found that "the [collective bargaining agreement] supercedes the personnel rules when the two are not in conflict" and that therefore "[t]he Authority did not violate the [collective bargaining agreement] by not giving [Plaintiff] notice . . . and a right to a hearing in accordance with the personnel policy." (Id.) Therefore, although Defendant's conduct fell within the bounds of the collective bargaining agreement, Defendant

---

[8]     This Court stated earlier that, due to Plaintiff's allegations of bias, it would view the findings of the Arbitration Board "with caution." See note 4, supra. However, with regard to Plaintiff's allegation that Defendant violated its personnel policies, the Court concludes that the Board of Arbitration's findings are helpful, not prejudicial, to Plaintiff. Therefore, the Court sees no harm in relying upon them in this context.

did violate its own personnel policies with regard to Plaintiff's termination. Moreover, since the collective bargaining agreement and the personnel policies were "not in conflict," Defendant could have legally complied with both. This departure from procedural regularity could lead a rationale fact-finder to infer that Defendant's proffered nondiscriminatory explanation is pretextual. See Stern, 131 F.3d at 313.[9]

Plaintiff's remaining argument to show pretext is the allegation that the Housing Authority's refused to entertain a "cost savings plan" that Plaintiff proposed in 2004. (Pl.'s Mem. Opp. Mot. Summ. J. 13.) An employer experiencing financial difficulties, the argument goes, would not so quickly dismiss an opportunity to save money.[10] Many legitimate reasons come to mind as to why an employer, even in financial distress, might not pursue an employee's proposal. Moreover, it is also possible that Plaintiff's "cost savings plan" was proposed before the Housing Authority's financial problems came to light. Still, in a motion for summary judgment, such uncertainties must be resolved in favor of the non-moving party. See, e.g., Rodriguez, 72 F.3d at 1060 (2d Cir. 1995) (stating that the court draws "all factual inferences in favor of the party against whom summary judgment is sought"). Indeed, a jury might find it strange that an employer experiencing financial difficulties flatly rejected even considering such a "cost savings plan."

---

[9]    The fact that providing notice and a hearing would be "a little to 'no-cost function'" is hardly probative. An employer that lacks the resources for costly obligations such as employing individuals does not by implication engage in all other less costly activities. Still, as evidence of a departure from procedural regularity, the failure of Defendant to provide notice and a hearing is relevant.

[10]   Defendant urges that Plaintiff's alleged creation of a "cost savings plan" demonstrates that Plaintiff was aware of Defendant's financial difficulties, and that any attempt by him to show pretext is therefore disingenuous. (Def.'s Reply 7.) This argument is not persuasive; a motivated employee might seek to help his employer reduce costs, even in the absence of financial hardship.

Ultimately, Plaintiff's showing of pretext, in light of Mr. Broccoli's alleged statement during the July 6, 2004 meeting combined with Plaintiff's allegation that he was the only employee in the history of the White Collar Bargaining Unit to be discharged, leads this Court to conclude that a questions of fact remains as to whether the reasons proffered for Plaintiff's discharge are merely pretext for age discrimination.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 48] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, November __20__, 2006.

_____
                                                /s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut

21